<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THERABODY, INC., | |
| Plaintiff, | No. 23cv21995 (EP) (LDW) |
| v. | **OPINION** |
| DIALECTIC DISTRIBUTION LLC, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiff Therabody, Inc. ("Therabody" or "Plaintiff") brings this action against Defendant Dialectic Distribution LLC ("Dialectic" or "Defendant") stemming from Defendant's alleged unauthorized distribution of Plaintiff's brand name products including percussive massage devices, wellness products, and accessories, and unauthorized use of Plaintiff's trademarks. Plaintiff's well-known brands include THERAGUN® and THERABODY® and other similar iterations of those marks. D.E. 10 ("Amended Complaint" or "Am. Compl."). The Amended Complaint alleges federal and state law claims for declaratory and injunctive relief, trademark infringement, trademark dilution, unfair competition, and false advertising.[1]

Defendant moves to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, to stay the case pending the determination of a patent

---

[1] Although the parties do not dispute this Court's jurisdiction over the state law claims, the Court has an independent duty to determine its own subject matter jurisdiction. *See N.J. Carpenters and the Trustees Thereof v. Trishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). The Court is satisfied that it has supplemental jurisdiction over the state law claims because they are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

case pending against Therabody in the United States District Court for the District of Delaware. D.E. 12-1 ("Mot."). The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the reasons set forth below, the motion will be **DENIED**. All counts will proceed, and the Court will not stay this case.

## I. BACKGROUND[2]

### A. Factual Background

#### 1. *Therabody's brands and resale conditions*

Plaintiff's business centers on the "design, manufacture, and sale of high-end percussive massage devices, wellness products and accessories" (the "Products") under various brand names, including THERAGUN® and THERABODY®. Am. Compl. ¶ 15, Ex. A. Therabody's extensive advertising efforts have resulted in significant sales and popularity amongst consumers. *Id.* ¶¶ 15-33. The THERAGUN® brand, for example, may now be considered a household name. *See, e.g.*, Gogo Zoger, *How Therabody Became Synonymous with Recovery and Wellness*, SHOPIFY (Jan. 5, 2023), https://perma.cc/QW3X-DVWA.

To protect its intellectual property, Plaintiff acquired numerous U.S. Trademarks (the "Trademarks").[3] Am. Compl. ¶ 16, Ex. A. Plaintiff advertises and sells the Products on its own website; through select online retailers; on the Amazon marketplace; in traditional brick-and-mortar stores; and through specific wholesalers, distributors, and authorized resellers (each, an "Authorized Reseller" and collectively, the "Authorized Resellers"). *Id.* ¶¶ 19-20. Authorized

---

[2] The facts in this section are taken from the well-pled factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] The Serial Numbers of the Trademarks are 87206326, 88422970, 88721223, 88682612, 88422917, 88682598, 88682583, 88536440, 88422901, 88402300, 88402270, 88471826, 88633980, 88607032, 90318341, 88983985, 88696755, 88983066, 90321763, and 88983065. Am. Compl. Ex. A.

Resellers enter contracts with Plaintiff ("Reseller Agreements"), which, *inter alia*, bind Authorized Resellers to "Terms and Conditions." *Id.* ¶¶ 69-72, Ex. C. The Terms and Conditions establish quality controls and resale policies to ensure that Therabody's brands and goodwill are not negatively impacted by—and that consumers are protected from—poor resale practices. *See id.* ¶ 73. The Terms and Conditions also reference Therabody's Limited Product Warranty (the "Warranty") that purchasers are entitled to. *Id.* ¶¶ 44-48, Ex. B, Ex. C ¶ 8. Importantly, the Warranty only attaches to Products sold by Plaintiff or by Authorized Resellers. *Id.* ¶ 45, Ex. B.

2. *Dialectic's unauthorized distribution of Therabody's Products*

Since at least August 31, 2023, Defendant has distributed and sold Plaintiff's Products without Plaintiff's authorization. *Id.* ¶¶ 92, 95-96, 98, 100. Defendant does not abide by the quality controls set forth in the Reseller Agreements that Authorized Resellers agree to. *Id.* ¶ 110. Moreover, the Products sold by Defendant do not contain the Warranty. *Id.* ¶ 45, 74, 91, 103-05, Ex. B. Defendant advertises that the Products do come with the Warranty, even though that is not the case. *Id.* ¶¶ 107-08.

When Plaintiff became aware of Defendant's unauthorized sale and marketing, it sent a cease-and-desist letter to Defendant on August 31, 2023, followed by a second cease-and-desist letter on September 20, 2023 (the "Demand Letters"). *Id.* ¶ 112; Exs. D, E. The Demand Letters notified Defendant that it was selling the Products, without Plaintiff's authorization, in violation of Plaintiff's Trademarks, and requested that Defendant cease selling the Products immediately. *Id.* ¶ 114; Exs. D, E. However, Defendant has not responded to the Demand Letters and continues to distribute and sell the Products. *Id.* ¶¶ 116-18.

B. **Procedural Background**

Therabody initiated this action on November 6, 2023. D.E. 1. Defendant moved to dismiss the original complaint on January 8, 2024. D.E. 9. However, on January 26, 2024, Plaintiff filed

3

an Amended Complaint, mooting the original motion to dismiss.  D.E. 10.  The Amended Complaint alleges eight federal and state law counts against Defendant: (I) Declaratory Judgment/Injunctive Relief; (II) Common Law Unfair Competition; (III) False Advertising (15 U.S.C. § 1125(a)(1)(B)); (IV) Trademark Infringement (15 U.S.C. § 1114); (V) Unfair Competition ("15 U.S.C. § 1125(a)); (VI) Trademark Dilution (15 U.S.C. § 1125(c)); (VII) Trademark Infringement (N.J. Stat. Ann. § 56:4-1); and (VIII) Unfair Competition (N.J. Stat. Ann. § 56:4-1).  Am. Compl. ¶¶ 121-290.

On February 8, 2024, Defendant filed the instant motion to dismiss the Amended Complaint, or, alternatively, to stay the case.  D.E. 12.  Plaintiff opposes.  D.E. 14 ("Opp'n").  Defendant does not reply.

## II.     LEGAL STANDARD

### A.     Federal Rule of Procedure 12(b)(6)

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss for failure to state a claim, the reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B.     Motion to Stay

Courts have inherent power to stay proceedings as "'incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Bank of New York Mellon v. Witty*, No. 15-cv-500, 2024 WL 303173, at *4 (D.N.J. Jan. 25, 2024) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). "When evaluating a motion to stay proceedings, courts generally weigh a number of factors including, '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party [ ]; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party [ ]; (3) whether a stay would simplify the issues and the trial of the case [ ]; and (4) whether discovery is complete and/or a trial date has been set.'" *Id.* (quoting *Gentry v. Chubb*, No. 21-cv-13744, 2021 WL 11959607, at *1 (D.N.J. Dec. 22, 2021)) (alterations in original).

### III.    ANALYSIS

### A.     Count I (Declaratory Judgment/Injunctive Relief) Will Proceed

Count I seeks declaratory judgment that "Defendant has no right or authorization to distribute or sell the Products, or use the Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial" and that the "Demand Letters gave Defendant actual notice that it was not authorized to use the Trademarks, and any continued use of the Trademarks or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademarks." Am. Compl. ¶¶ 123-24. Count I also seeks an injunction against Defendant prohibiting it from "any further sales of the Products and use of the Trademarks." *Id.* ¶ 126. Defendant argues that declaratory judgment is not warranted because all other claims

should be dismissed and, thus, there remains no dispute between the parties.  Mot. at 4.  The Court disagrees.[4]

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  To satisfy the "actual controversy" requirement, the dispute must be one that evidence a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).

Plaintiff argues that a declaration stating that Defendant violated Plaintiff's rights when Defendant allegedly used the Trademarks without authorization and requiring Defendant to immediately cease and desist use of the Trademarks are appropriate requests for declaratory judgment.  The Court agrees.

Specifically, Plaintiff seeks a declaration that (1) "Defendant has no right or authorization to distribute or sell the Products, or use the Trademarks," (2) "the Demand Letters gave Defendant actual notice that it was not authorized to use the Trademarks, and any continued use of the Trademarks or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademarks," and (3) that Defendant must cease "any further sales of the Products and use of the Trademarks."  Am. Compl. ¶¶ 123-24, 126.  There is a substantial controversy between the parties regarding these rights, especially whether Defendant was authorized to sell the Products and use the Trademarks.  These are real, adverse interests that fall within the ambit of Section 2201(a).  *See, e.g.*, *Parikh Worldwide Media, LLC v. Sheth*, No. 20-cv-01185, 2021 WL 856901,

---

[4] Defendant does not address the injunctive relief sought in Count I in its motion.

at *5 (D.N.J. Mar. 8, 2021) (holding that the plaintiff adequately stated a claim for declaratory relief when it sought a declaration that "(1) Defendant's use and registration of the infringing websites violate Plaintiffs' rights; (2) Defendant must immediately cease and desist use of the marks; and (3) Defendant must transfer the websites to Plaintiffs").  Therefore, Count I will proceed.

**B.     Count IV (Trademark Infringement – 15 U.S.C. § 1114) and Count VII (Trademark Infringement – N.J. Stat. § 56:4-1) Will Proceed**

Count IV alleges trademark infringement in violation of 15 U.S.C. § 1114, Am. Compl. ¶¶ 169-97, and Count VII alleges trademark infringement in violation of N.J. Stat. Ann. § 56:4-1, *id.* ¶¶ 237-65.  Defendant argues that Plaintiff fails to state a federal claim for trademark infringement under the Lanham Act because it does not allege that Defendant "has ever offered, distributed, possessed, sold, or advertised any goods or services of any kind bearing or imitating Plaintiff's marks, or even had the capacity to do so," and therefore also fails to state a claim under New Jersey state law.  Mot. at 6-7, 10.  The Court disagrees and finds that Plaintiff adequately pleads trademark infringement under both federal and New Jersey state law.

*1.     Count IV – 15 U.S.C. § 1114*

Section 32 of the Lanham Act, in 15 U.S.C. § 1114(1)(a), provides, in part, that "any person who shall, without the consent of the registrant . . . (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . ." is liable for trademark infringement.  To state a claim under § 1114, a plaintiff must show "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods

or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

The Amended Complaint clearly alleges the valid and legally protectable marks at issue and that they are owned by Plaintiff.  Am. Compl. ¶ 16, Ex. A.  The Amended Complaint also clearly alleges that Defendant sold the Products that bear these marks.  *Id.* ¶¶ 16, 87-90, 92, 95-96, 98, 100, 103.  The sole issue therefore becomes whether that use "causes a likelihood of confusion." *A&H Sportswear, Inc.*, 237 F.3d at 210.

Under the "first sale" or "exhaustion" doctrine, "a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (1998).  However, this doctrine has its limits.  Trademark owners may still sue for trademark infringement "when the products offered for sale are similar but not identical to those offered by the trademark owner." *Id.* at 302.  Therefore, if the alleged infringer's good are "materially different" than those of the trademark owner, then the "alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement." *Id.* at 303.  "The purpose of the material differences test is to determine whether the allegedly infringing products are likely to injure the goodwill developed by the trademark owner in the trademarked goods." *Id.*

Here, the allegation is not that Defendant is selling counterfeit products.  Plaintiff does not dispute that Defendant sold real Products manufactured by Plaintiff.  The gravamen of Plaintiff's infringement allegations is that Defendant is selling the Products without Plaintiff's permission and without entering into a Reseller Agreement.  Am. Compl. ¶¶ 92, 95-96.  Plaintiff claims that Defendant's actions cause consumer confusion because (1) the Products sold by Defendant are

"materially different" to those sold by Plaintiff or Authorized Resellers since they do not come with the Warranty, Opp'n at 8; Am. Compl. ¶¶ 74, 91, 103-05, Exs. B, C ¶ 8, and (2) Defendants do not handle the Products with the requisite quality controls as mandated by the Reseller Agreements, Opp'n at 8; Am. Compl. ¶ 110.

The parties do not point the Court to any factually analogous cases. However, the Court finds *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-cv-05246, 2019 WL 7288946 (D.N.J. Dec. 30, 2019) to be instructive. The *Rockwell* court thoroughly outlined the contours of the "material differences" exception to the "first sale" doctrine and the Court adopts that discussion herein. *Id.* at *5-8. In *Rockwell*, a trademark infringement claim survived summary judgment because the goods sold were "materially different" where they lacked the warranty and customer service that would have accompanied authorized sales. *See id.* at *1-3, 9. The court further explained that "Rockwell has created a closed and exclusive supply chain of its trademarked goods by obligating a vertical supply network of authorized distributors to sell Rockwell trademarked goods ONLY to those customers who will NOT re-sell the goods on the gray market." *Id.* at *1 (emphasis in original).

*Rockwell* is persuasive authority; here Plaintiff adequately alleges the goods sold by Defendants are "materially different" from those sold by Plaintiff or by Authorized Resellers. Like in *Rockwell*, Plaintiff alleged that the products sold by Defendant do not come with the Warranty like authorized sales. Am. Compl. ¶¶ 74, 91, 103-05, Exs. B, C ¶ 8. This Warranty is not insignificant. Plaintiff advertises various Theragun models that retail at prices between $169 and $599. *See* Theragun, THERABODY, https://perma.cc/27TL-RAFB (last visited May 30, 2024). *C.f. Penn Eng'g Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, 2022 WL 3647817, at *12-13 (E.D. Pa. Aug. 24, 2022) (finding that where a resale extinguished a warranty, the goods were

not "materially different" from the original goods because the products at issue were inexpensive and simple fasteners that cost only a few cents each and, therefore, the warranty and any customer service is immaterial).  To purchasers from Authorized Resellers, Therabody warrants the Products "against defects in materials and workmanship when used normally in accordance with Therabody's published guidelines . . . ."  *Therabody Warranty*, THERABODY (Apr. 1, 2024), https://perma.cc/UA2K-4GA3; *see also* Am. Compl. ¶¶ 44-48, Ex. B.

Moreover, the quality controls that Plaintiff alleges come with Products purchased through Authorized Resellers are not insignificant.  Amongst other things, an Authorized Reseller must (i) "conduct its business in a manner that reflects favorably on the Products and the good name, goodwill and reputation of Therabody, in accordance with any guidelines issued by Therabody," (ii) "comply with all Therabody procedures . . . including, but not limited to, the Purchase Requirements," (iii) "provide its customers . . . with appropriate information regarding the Products and their safe and effective use," (iv) "avoid deceptive, misleading, unfair and unethical practices, which are or might be detrimental to Therabody or the Products," and (v) "establish and implement an effective standard operating procedure for the urgent recall of the Products."  Am Compl. ¶ 73.  Plaintiff alleges that Defendant does not abide by these quality controls.  *Id.* ¶ 111.

Plaintiff alleges that such lack of quality controls affects a purchaser's experience with the Product in meaningful and important ways.  For example, Plaintiff alleges (i) Defendant is unable to provide accurate, up-to-date information concerning the Products to any customer, *id.* ¶ 101, (ii) Defendant does not have an established standard operating procedure in the event of a recall, *id.* ¶ 102, and (iii) Defendant advertises the sale of the Products with misrepresentations, warranties, and guarantees regarding the Product specifications, features, or capabilities, in ways inconsistent with Plaintiff's distributed materials, *id.* ¶ 108.

10

If a hypothetical consumer purchases a Theragun from Defendant that is defective, cannot obtain Warranty coverage, and, when seeking assistance from Defendant, is not afforded the same experience mandated by Therabody's quality control requirements for Authorized Resellers, it is plausible that the purchaser will confuse their purchase with that of an authorized Therabody product and their negative experience is likely to injure the goodwill developed by Therabody in the Products. *See Iberia Foods Corp.*, 150 F.3d at 303; *Rockwell*, 2019 WL 7288946, at *1-3, 9. Therefore, Plaintiff adequately alleges trademark infringement under 15 U.S.C. § 1114 and Count IV will proceed.

2.      *Count VII – N.J. Stat. § 56:4-1*

New Jersey's Unfair Competition Act states, in part, that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J. Stat. Ann. § 56:4-1. The pleading standards and elements for this statute are the same as those under the Lanham Act. *See Adam Techs., LLC v. Well Shin Tech. Co.*, No. 18-cv-105313, 2020 WL 2125007, at *2 (D.N.J. May 5, 2020); *J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002). Therefore, because Plaintiff states a claim for trademark infringement under the Lanham Act, it also states a claim under New Jersey's Unfair Competition Act and Count VII will proceed.

**C.      Count III (False Advertising - 15 U.S.C. § 1125(a)(1)(B)) Will Proceed**

Count III alleges false advertising under 15 U.S.C. § 1125(a)(1)(B). Am. Compl. ¶¶ 149-68. Defendant argues that Plaintiff has not (i) identified any false or misleading statements made by Defendant; (ii) alleged that Defendant ever advertised any of Plaintiff's products for sale; (iii) identified any actual deception or deception that is likely to influence purchasing decisions; (iv) identified any products that travelled in interstate commerce; and (v) alleged that any advertising

or representation from Defendant would cause harm to Plaintiff.  Mot. at 5-6.  The Court disagrees and finds that Plaintiff alleges all requisite elements under § 1125(a)(1)(B).  Therefore, Count III will proceed.

Under § 1125(a)(1)(B), "[a]ny person who, on or in connection with any goods . . ., uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities," is liable for false advertising.  The elements of a claim for false advertising under § 1125(a)(1)(B) are: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 n.7 (3d Cir. 2017) (alteration in original).

Here, Plaintiff pleads all requisite elements.  Plaintiff alleges that Defendant's false and misleading statements include asserting that the Products come with the Warranty, when in fact, they do not.  Am. Compl. ¶¶ 107-08.  The allegations sufficiently plead a tendency to deceive a substantial portion of the intended audience.  As discussed *supra*, the Theragun is an expensive product and one for which a Warranty would likely be important for a purchaser.  Under these circumstances, Defendant's alleged representation that the Products come with the Warranty when, in fact, they do not, at least has the tendency to deceive a substantial portion of the intended audience.  As alleged, the purchaser would be better off purchasing the Theragun with the

Warranty than one without the Warranty and a rational purchaser, without being deceived, would opt not to purchase a Theragun from Defendant in favor of one with the Warranty.

Plaintiff also adequately pleads a likelihood of injury resulting from the loss of good will. As discussed *supra*, purchasers who need to rely on the Warranty only to find that they were misled by Defendant will likely associate that significant negative experience with Therabody's brand, thereby injuring the goodwill Therabody has worked hard to develop and protect.

Plaintiff also adequately pleads that the goods travelled in interstate commerce.  Although Paragraph 153 of the Amended Complaint[5] is conclusory, Plaintiff also alleges that "Defendant is flooding the e-commerce marketplace" with the advertised goods.  Am. Compl. ¶ 89.  At the motion to dismiss stage, where only notice pleading is required, it is sufficient to allege that Defendant sells the products online as "claims arising out of Internet advertising implicate interstate commerce based on the very nature of the Internet which has potential to reach a worldwide audience." *Hinton v. Sansom Street, Inc.*, No. 20cv1515, 2021 WL 1313107, at *5 (E.D. Pa. Apr. 7, 2021) (citing *United States v. MacEwan*, 445 F.3d 237, 244-245 (3d Cir. 2006)). Without discovery, Plaintiff may not know which states Defendant sells its products in.  However, weighing all reasonable inferences in Plaintiff's favor, alleging that Defendant sells the Products in "e-commerce" sufficiently alleges that the advertised goods traveled in interstate commerce.[6]

---

[5] "Plaintiff understands that Defendant has willfully and knowingly used, and continued to use, the Trademarks in interstate commerce for the purposes of advertising, promoting, distributing, and selling the Products without Plaintiff's consent."  Am Compl. ¶ 153.
[6] Plaintiff cites *Industria de Alimentos Zenu v. Latinfood U.S. Corp.*, No. 16-cv-6576, 2017 WL 6940696, at *11 (D.N.J. Dec. 29, 2017) for the proposition that it does not need to plead that the advertised goods traveled in interstate commerce.  Opp'n at 11.  However, *Latinfood* does not stand for this proposition.  The discussion that Plaintiff refers to in *Latinfood* is regarding whether there is a Lanham Act requirement that Plaintiff first use trademarks at issue in U.S. commerce. *See Latinfood*, 2017 WL 6940696, at *11-13.  The *Latinfood* court stated that there "is no Third Circuit holding on this issue."  *Id.* at *13.  In contrast, the Third Circuit has clearly stated that an element under § 1125(a)(1)(B) is that that the advertised goods traveled in interstate commerce.

13

Because Plaintiff has adequately alleged all requisite elements under § 1125(a)(1)(B), Count III will proceed.

### D.    Count VI (Trademark Dilution – 15 U.S.C. § 1125(c)) Will Proceed

Count VI alleges trademark dilution in violation of 15 U.S.C. § 1125(c).  Am. Comp. ¶¶ 223-36.  Defendant argues that Plaintiff does not adequately allege that (i) the Trademarks are "famous"; (ii) Defendant is using the Trademarks in interstate commerce; (iii) Defendant's use began after the Trademarks became famous; and (iv) Defendant's use causes dilution by lessening the capacity of the Trademarks to identify and distinguish goods or services.  Mot. at 8-9.  The Court finds that Plaintiff adequately alleges all requisite elements under § 1125(c).  Therefore, Count VI will proceed.

Pursuant to § 1125(c), "[s]ubject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in interstate commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  This cause of action "grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion . . . if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark."  *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000).

---

*Parks*, 863 F.3d at 226 n.7; *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000).  Indeed, the *Latinfood* court cites *Warner-Lambert* for this very proposition.  *Latinfood*, 2017 WL 6940696, at *16 (citing *Warner-Lambert*, 204 F.3d at 91-92).

The elements of the claim are (i) the plaintiff is the owner of a mark that qualifies as "famous," as defined by the factors listed in § 1125(c)(2)(A)[7]; (ii) the defendant is making commercial use in interstate commerce of a mark or trade name; (iii) the defendant's use began after the plaintiff's mark became famous; and (iv) the defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services. *See Times Mirror Magazines*, 212 F.3d at 163.

Here, Plaintiff alleges all requisite elements.  Plaintiff alleges it owns the Trademarks.  Am. Compl. ¶ 16, Ex. A.  Plaintiff also adequately alleges that the Trademarks are "famous" as defined by § 1125(c)(2)(A).  Plaintiff alleges that its marks are widely recognized by the general U.S. consuming public.  For example, it alleges that it widely promotes its products in traditional online outlets, through social media platforms, in popular television shows and media outlets throughout the entertainment industry, and through traditional print advertising.  Am. Compl. ¶¶ 22-27, 226. Plaintiff alleges that these efforts "resulted in the explosion of popularity in marketplaces with positive consumer reviews . . . ."  *Id.* ¶ 30.  Moreover, the THERAGUN® brand, in particular, is so well known that it is now be considered a household name akin to "Band-Aid" or "Kleenex." *See* Gogo Zoger, *How Therabody Became Synonymous with Recovery and Wellness*, SHOPIFY (Jan. 5, 2023), https://perma.cc/QW3X-DVWA.  These alleged promotional efforts and resulting recognition, if proven, establish the Trademarks as "famous."  *See Parikh Worldwide Media*, 2021 WL 856901, at *4.

---

[7] Section 1125 has been amended since the Third Circuit decided *Times Mirror Magazines*. Although the Third Circuit cites eight factors in § 1125(c)(1) for determining whether a mark is "famous," the current version of § 1125 lists the relevant factors in subsection (c)(2)(A). Additionally, a mark may still be famous under § 1125(c)(2)(A), even if not famous to the general public, "where both the plaintiff and defendant are operating in the same or related markets, so long as the plaintiff's mark possesses a high degree of fame in its niche market." *Times Mirror Magazines*, 212 F.3d at 164.

Plaintiff also alleges that Defendant's use of the Trademarks began after the Trademarks became famous.  August 31, 2023 is the earliest date that the Amended Complaint alleges Plaintiff used the Trademarks.  Am. Compl. ¶ 92.  Plaintiff filed applications for the Trademarks with the United States Patent and Trademark Office between 2016 and 2020.  *Id.* Ex. A.  While it is at least conceivable that, with fact discovery, Defendant may be able to show that at least some of the Trademarks were not famous before it used the marks, at the motion to dismiss stage, Plaintiff's allegations are sufficient to allege the Trademarks were famous prior to August 31, 2023.  This is because Plaintiff alleges it took actions to make the marks famous prior to that date.  *See supra*; Am. Compl. ¶¶ 22-27, 30, 226; Gogo Zoger, *How Therabody Became Synonymous with Recovery and Wellness*, Shopify (Jan. 5, 2023), https://perma.cc/QW3X-DVWA.

Plaintiff further adequately alleges that Defendant's use caused dilution by lessening the capacity of the Trademarks to identify and distinguish the Products.  This is a lesser standard than the consumer "confusion" standard applicable to trademark infringement.  *See Times Mirror Magazines*, 212 F.3d at 163.  Therefore, for the same reasons the Court finds that Plaintiff alleges Defendant's use of the Trademarks causes a likelihood of confusion, *supra*, it finds that Plaintiff alleges Defendant's use caused dilution by lessening the capacity of the Trademarks to identify and distinguish the Products.

Finally, Plaintiff alleges that Defendant is making commercial use in interstate commerce of the Trademarks.  *See supra*; Am. Compl. ¶ 90 ("Defendant is flooding the e-commerce market . . . ."); *Hinton*, 2021 WL 1313107, at *5 (citing *MacEwan*, 445 F.3d at 244-245).  Therefore, since all requisite elements of this claim have been adequately plead, Count VI will proceed.

**E.    Count II (Common Law Unfair Competition), Count V (Unfair Competition – 15 U.S.C. § 1125(a)), and Count VIII (Unfair Competition – N.J. Stat. Ann. § 56:4-1) Will Proceed**

Count II alleges New Jersey common law unfair competition[8], Am. Compl. ¶¶ 127-48; Count V alleges unfair competition under 15 U.S.C. § 1125(a), *id.* ¶¶ 198-222, and Count VIII alleges unfair competition under N.J. Stat. Ann. § 56:4-1, *id.* at 266-90.  Defendant argues that both New Jersey and federal unfair competition claims should be dismissed because the analysis mirrors that under the federal false advertising claim, and because the Amended Complaint does not adequately allege the elements of a federal false advertising claim.  Mot. at 5-6, 8.  The Court finds that Plaintiff adequately alleges unfair competition under New Jersey common law and under federal and New Jersey statutory law.

"[U]nfair competition claims under New Jersey statutory and common law mirror unfair competition claims under § 43(a) of the Lanham Act"—the elements are the same.  *N.Y. Mach. Inc. v. Korean Cleaners Monthly*, No. 17-cv-12269, 2018 WL 2455926, at *4 (D.N.J. May 31, 2018).  Moreover, unfair competition claims under § 1125(a)(1)(A) and trademark infringement under § 1114 are measured by "identical standards."  *A&H Sportswear*, 237 F.3d at 210.  To the extent there are district courts cited by Defendant that appear to hold otherwise, the Court is not bound by those decisions and follows binding Third Circuit precedent in *A&H Sportswear*.

The Court finds, *supra*, that the Plaintiff states a claim for trademark infringement under the Lanham Act.  Therefore, under *A&H Sportswear*, Plaintiff also states a claim for unfair competition under the Lanham Act.  Furthermore, because Plaintiff states a claim for unfair competition under the Lanham Act, it also states a claim for unfair competition under New Jersey

---

[8] "There is no federal general common law" and, with the exception of federal statutes or federal constitutional claims, courts must apply state law to disputes.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Therefore, although the Amended Complaint does not so specify, the Court construes Count II as asserting a claim under N.J. state common law.

common law and N.J. Stat. Ann. § 56:4-1.  *See N.Y. Mach.*, 2018 WL 2455926, at *4.  As such, Counts II, V, and VIII will proceed.

### F.        The Court Will Not Stay This Case

Defendant argues this case should be stayed pending the determination of a patent case pending against Therabody in the United States District Court for the District of Delaware, *Hyper Ice, Inc., et. al. v. Therabody, Inc.*, No. 24-cv-04 (D. Del. 2024).  Mot. at 11, Ex. A.  The Court disagrees.

> '[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  It 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' *Id.* at 254-55.  The requesting party bears the heavy burden of 'mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.' *Id.* at 255.

*ADP, Inc. v. Wise Payments Ltd.*, No.  21-cv-12457, 2023 WL 3775319, at *3 (D.N.J. July 19, 2023) (alteration in original).  "A court should consider the following in deciding whether to grant a motion to stay: '(1) [j]udicial efficiency as measured by the stage of the civil litigation and the stay's potential to simplify the issues; (2) harm or unfair prejudice to the non-moving party that will result from the grant of a stay; and (3) the hardship and inequity to the moving party if the stay is denied.'"  *Shaf Int'l, Inc. v. Ultimate Leather Apparel, Inc.*, No. 20-cv-2569, 2021 WL 409757, at *2 (D.N.J. Feb. 5, 2021) (quoting *Tigercat Int'l v. Caterpillar Inc.*, No. 16-cv-1047, 2018 WL 2049816, *2 (D. Del. May 2, 2018)).

Here, Defendant's request for a stay based on *Hyper Ice* is moot because, on February 23, 2024, Therabody was voluntarily dismissed from *Hyper Ice* and the case was closed. *Hyper Ice*, No. 24-cv-04, D.E. 18 (D. Del. 2024).[9]  Therefore, the Court will not stay this case.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, or, in the alternative, for a stay will be **DENIED**.  All counts will proceed, and the Court will not stay this case.

Dated: July 10, 2024

 s/ Evelyn Padin
Evelyn Padin, U.S.D.J.

---

[9] The Court notes that Defendant did not inform the Court that *Hyper Ice* had been resolved after it filed its motion.  The Court expects parties to update it if case law that is cited no longer provides support for a party's position due to intervening changes in the cited case's posture.